**UNIFIED SCHOOL DISTRICT NO. 457, FINNEY COUNTY, KANSAS, Plaintiff,**

v.

**Jimmy O. PHIFER, Defendant.**

No. 87–1187–C.

United States District Court, D. Kansas.

Jan. 30, 1990.

Alan L. Rupe, Marc A. Powell, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for plaintiff.

Jimmy O. Phifer, Tucson, Ariz., pro se.

Jack Focht, Wichita, Kan., for defendant.

CROW, District Judge.

## MEMORANDUM AND ORDER

The case comes before the court on the plaintiff's motion for summary judgment on the defendant's counterclaims. Plaintiff, Unified School District No. 457 (District), brings this action against defendant, Jimmy O. Phifer, a former superintendent of schools for the District, seeking damages on claims of wrongful conversion and breach of contract. Defendant counterclaims that plaintiff breached a contract to pay him additional earned and unearned salary and vacation pay and to reimburse him for certain expenditures made on behalf of the District. Defendant also counterclaims that plaintiff deprived him of a protected property interest and/or liberty interest without due process of law. Plaintiff moves for summary judgment on all counterclaims; defendant opposes the motion.

In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–2512.

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. 477 U.S. at 249, 106 S.Ct. at 2510. Where reasonable minds would not differ over the import of the evidence and could only reach one conclusion as to the evidence, summary judgment is appropriate. 477 U.S. at 250, 106 S.Ct. at 2511.

The movant's initial burden under Fed.R. Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir. 1986), *cert. denied* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon*, 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). "[C]onclusory assertions to aver the absence of evidence remain insufficient to meet this burden." *Windon*, 805 F.2d at 345 n. 7. The movant, however, does not have the burden to prove a negative, that is, to disprove the nonmoving party's evidence. *Id.* at 346. It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party's evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judg-

ment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R. Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ The court must call attention to the defendant's effort at controverting the plaintiff's facts and in submitting his own statement of facts. The local rules of this court require the party opposing summary judgment to set forth the material facts in dispute. "Each fact in dispute shall be numbered by paragraph, shall refer with *particularity* to those portions of the record upon which the opposing party relies...." D.Kan. 206(c) (emphasis supplied). In several instances, the defendant made only a broad reference to multiple exhibits to sustain a single statement of fact. For example, defendant cited generally to eight of his thirteen exhibits as support for the proposition that his conditional resignation was not unconditionally accepted by the District. These eight exhibits consist of well over three hundred pages. Such a practice does not substantially comply with the local rule and contravenes the spirit of that rule to aid the court in its determination of the uncontroverted facts.

The following facts are uncontroverted and relevant for purposes of deciding the summary judgment motion.

1. Under his first written contract with the District, defendant began serving as superintendent of schools on July 1, 1984. This agreement was superseded by a second contract effective July 1, 1985, under which plaintiff was to be employed for twenty-four months at a salary of $62,-500.00 for the first twelve months.

2. As superintendent, defendant submitted monthly requests for reimbursement which totalled over $116,000.00 during his twenty and one-half months of employment.

3. On March 31, 1986, *The Garden City Telegram,* a local newspaper, published an article on its front page entitled "Superintendent Left Trail of Debts." The article reports that defendant filed for individual bankruptcy in August of 1984. The article listed the defendant's discharged debts which totalled over $165,000.00 and included credit card charges and personal loans. In the same edition of the newspaper, another article appeared: "Since Inquiries, Phifer Pays Back $12,193.00." It noted that sometime after the paper began its investigation, Phifer had returned $12,-193.00 to the District for expenditures which he had received previous reimbursements. The newspaper published other articles on April 1 and 2, 1986, questioning certain reimbursements by Phifer.

4. The Board of Education (Board) for the District held a special meeting on April 2, 1986. Defendant was present during the Board's open session and for a portion of its executive session. The minutes of the meeting reflect the Board decided that any insinuation of impropriety by the superintendent would be investigated by an independent auditor. On April 9, 1986, the Board decided to hire a local accounting firm to handle the investigation into the reimbursements paid to defendant.

5. On April 11, 1986, an article entitled, "U.S.D. Suppliers Disappear Into Desert," appeared in *The Garden City Telegram* reporting that an investigation of two companies, Landmark Corporation and University Consultants, Ltd., named on reimbursement vouchers submitted by Phifer, failed to uncover any documents substantiating their existence. Phifer prepared his resignation letter after reviewing a draft of this article before publication. No school board member forced Phifer to resign.

6. Phifer submitted to the Board a letter of resignation dated April 12, 1986, which reads in pertinent part:

> Please accept my resignation as Superintendent of Schools effective June 30, 1986. This resignation is conditioned that I be placed on paid leave until June 30, 1986 and that my insurance continue until June 30, 1986 and that I be paid for the vacation leave that I have accrued.
>
> . . . .
>
> Please understand that my decision to step down is motivated by the series of

false and malicious articles published by the Garden City Telegram. I have done nothing wrong but the publicity has made it impossible for me to adequately administer the affairs of the district.

(Plaintiff's Ex. I).

7. Phifer and his wife left Garden City on Sunday, April 13, 1986, for Tucson, Arizona. Plaintiff never returned to Garden City and never served in the capacity as superintendent of schools after that date.

8. The Board met on April 14, 1986, and accepted Phifer's resignation on his stated conditions but also withheld payment of the funds demanded pending a satisfactory conclusion of the district's investigation. In a letter dated April 15, 1986, the Board's attorney informed Phifer of the Board's decision, as follows:

> This letter is being forwarded to you in accordance with instructions from the Board of Education. At its regular meeting last evening the Board voted to accept your resignation submitted under date of April 12, 1986, according to the terms and under the conditions set forth therein, but to suspend or otherwise escrow in a special account the balance of the contract remuneration as called for under the terms of the accepted resignation pending a satisfactory conclusion of the special investigations currently being conducted.
>
> The Board desires to use every means at its disposal to investigate, to the extent possible, all of the allegations that have been made in The Garden City Telegram which give rise to an appearance of improprieties, and at the earliest date possible. We also understand that the escrowing of the remuneration for a matter of a few weeks might result in some temporary hardship on you. It is essential, of course, that we have your complete cooperation and support, and given that assistance we believe that the period of time that we are required to devote to this matter and within which open questions are satisfactorily resolved will be greatly reduced.

(Plaintiff's Ex. K).

9. The auditors completed their investigation and reported on May 28, 1986, that Phifer owed the District at least $15,178.65. A copy of this audit report was sent to plaintiff. He responded by letter dated June 24, 1986, to the items listed in pages 8 through 44 of the audit.

10. On March 10, 1987, the county attorney filed a seventeen count criminal complaint against Phifer in the District Court of Finney County, Kansas. He was charged with multiple counts of theft of funds from the District and presenting false claims to the District.

11. On March 26, 1987, plaintiff filed this civil action in the District Court of Finney County, Kansas, alleging defendant had wrongfully converted District property and had embezzled District funds.

12. The school board at a regular meeting on April 20, 1987, voted to rescind its conditional acceptance of plaintiff's resignation and to terminate Phifer "for material breach of contract effective April 12, 1986, for reason of misrepresentation on which the resignation was offered and conditioned upon his failure to cooperate with the special investigation." (Plaintiff's Ex. S).

13. Plaintiff was criminally tried on the seventeen counts in December of 1987. The jury returned a verdict of not guilty as to count one and was hung as to the remaining counts. A mistrial was declared by the court. After counts two, three, ten, eleven, and seventeen were dismissed by the State, plaintiff was tried on the remaining charges in March of 1988. The jury returned a verdict on April 1, 1988, finding defendant guilty as to all of the counts submitted. This conviction is presently on appeal to the Kansas Court of Appeals.

## DUE PROCESS

The protective arm of procedural due process is invocable only upon the claimant showing the deprivation of an interest within the Fourteenth Amendment's protected institutions of liberty or property. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

The range of protected interests is finite. *Id.* at 570, 92 S.Ct. at 2705.

### A. *Property Interest*

Though protected by it, property interests are not creations of the Constitution; they emerge from and their scope is defined "by existing rules or understandings that stem from an independent source such as state law...." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). A property interest is more than an "abstract need or desire" and also more than a "unilateral expectation." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. "The hallmark of property, ..., is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); *see also Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, 1395 (10th Cir.1988). "It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

■■ The determination of whether an employee has a property interest in his continued employment is made in accordance with state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Generally under Kansas case law, a public employee hired for a definite term has a property interest in continued employment, while an employee hired for a indefinite term is an "at-will employee" without a property interest. *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988).

The District argues Phifer had no right or expectation to continued employment after he submitted his letter of resignation dated April 12, 1986. Phifer responds that his resignation was conditioned upon certain terms and, because those terms were not unconditionally accepted by the District, his contractual stake in the superintendent position continued until the Board voted to terminate him on April 20, 1987.

In reply, the District convincingly shows there is no evidence of any agreement for Phifer's continued employment, particularly as revealed by Phifer's own conduct in leaving Garden City and permanently moving to Tucson, Arizona, the day after resigning.

Though novel, Phifer's claim of a property interest is untenable. The present case does not require any resort to the general rule that a voluntary resignation is not a deprivation within the meaning of the due process clause. *See Stone v. University of Maryland Medical System,* 855 F.2d 167, 173 (4th Cir.1988); *see generally Bailey v. Kirk,* 777 F.2d 567, 580 n. 17 (10th Cir. 1985). The issue, instead, is whether Phifer's resignation from superintendent effectively brought to an end any interest he might reasonably have in continued employment. Though aware of the contract principles governing offer and acceptance, the court does not believe those technical principles play a significant role in the existence of defendant's claimed property interest. The case *sub judice* is not one where the employee continues to perform in reliance upon his understanding that a contract still exists. Since his resignation and the Board's conditional acceptance of it, defendant has never attempted to act as superintendent nor ever demanded his job back. Rather, Phifer left Garden City the day after he resigned and moved to Tucson, Arizona. There is nothing factually ambiguous about the parties' intent after April 14, 1986. Both considered the employment relationship to had ended.

As explained later, the terms of Phifer's conditional resignation were not unconditionally accepted by the Board. Despite his certain intent to end his employment as evidenced both by his letter of resignation and his subsequent conduct, plaintiff attempts to build his property interest upon the slender reed of the Board's conditional acceptance of his conditional resignation. This foundation is legally insufficient to sustain the time-honored concepts associated with a property interest—"more than a unilateral expectation," "mutually explicit understandings," "a legitimate claim of en-

titlement," or that "upon which people rely in their daily lives." Property interests must be reserved for those basic things in people's lives upon which they understand and conduct themselves accordingly. On the peculiar facts of this case, the court finds that the employer's conditional acceptance of the employee's resignation did not give rise to a legitimate claim of entitlement to continued employment thereafter. The Board's decision to terminate Phifer in April of 1987 did not deprive him of a property interest in continued employment.

## B. *Liberty Interest*

Even if a property interest is absent, a procedural due process hearing may still be necessary if a liberty interest is implicated. *Rich v. Secretary of the Army*, 735 F.2d 1220, 1226 (10th Cir.1984). In the public employment setting, liberty encompasses two interests: "1) the protection of his [employee's] good name, reputation, honor, and integrity, and 2) his freedom to take advantage of other employment opportunities." *Conaway*, 853 F.2d at 794 (quoting *Miller v. City of Mission, Kan.*, 705 F.2d 368 (10th Cir.1983)).

■ Injury to reputation alone, however, does not trigger due process protection unless entangled with the loss of some more tangible interest such as employment. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *see also Setliff*, 850 F.2d at 1396. In *Setliff*, the Tenth Circuit recently summarized:

> Our cases recognize that the "more tangible interests" involve something more than an investigation of the sort conducted by the Hospital in this case. *See Dickeson v. Quarberg*, 844 F.2d 1435 (10th Cir.1988) (plaintiffs' employment terminated); *Harris v. Blake*, 798 F.2d 419 (10th Cir.1986) (plaintiff required to withdraw from graduate study program), *cert. denied*, 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987); *Koerpel v. Heckler*, 797 F.2d 858 (10th Cir.1986) (plaintiff excluded from eligibility for Medicaid reimbursements); *Mangels v. Pena*, 789 F.2d 836 (10th Cir.1986) (plaintiffs' employment terminated); *Bailey v. Kirk*, 777 F.2d 567 (10th Cir.1985) (plain-

tiff suspended without pay and demoted); *Asbill v. Housing Auth. of Choctaw Nation*, 726 F.2d 1499 (10th Cir.1984) (plaintiff discharged); *Walker v. United States*, 744 F.2d 67 (10th Cir.1984) (plaintiff's employment terminated).

850 F.2d at 1396. Consistent with the teachings in *Paul v. Davis*, the Tenth Circuit in each of those cases recognized a liberty interest because of an accompanying loss or distinct alteration of a right or status recognized under state law. *See Paul v. Davis*, 424 U.S. at 711, 96 S.Ct. at 1165. Consequently, stigmatizing remarks made during or after the employee's voluntary resignation do not implicate a liberty interest. *Stone*, 855 F.2d at 172–73 n. 5.

■ Phifer contends the "more tangible interest" behind his liberty interest claim is his contractual right to continued employment existing as the result of the Board's ineffective acceptance of his conditional resignation. Because of Phifer's resignation and his subsequent conduct, it would be incongruous now to call his recently professed contractual right a "tangible" interest. The court sees no reason to reiterate the points made previously on the parties' mutual understanding that no employment relationship existed after Phifer's resignation and the Board's acceptance, conditional or not, of it. The Board's attempt to make the termination retroactive is immaterial, as Phifer had already voluntarily relinquished all rights to continued employment by submitting his resignation and no longer performing under the contract. The Board's vote to terminate defendant on April 20, 1987, did not deny him of a right or status under state law that defendant had not already denied to himself. Without the concomitant loss of a tangible interest, defendant's liberty interest has not been implicated, and he is without an action under § 1983.

## UNEARNED SALARY AND VACATION PAY

■ As count I of his counterclaims, Phifer alleges the breach of a contract arising from the fact that his resignation was offered pursuant to certain conditions which

the District accepted by letter from its attorney dated April 15, 1986. These conditions were paid leave through June 30, 1986 and payment of accrued vacation leave. Plaintiff seeks summary judgment on this counterclaim arguing no contract exists as it did not unconditionally accept plaintiff's stated terms. Phifer argues a question of fact exists concerning whether the Board accepted his conditions.

"An offer communicated to the offeree creates a power to accept that offer and only that offer." *Ferrero v. Amigo, Inc.,* 703 F.Supp. 890, 892 (D.Kan.1988). "Any expression of assent that changes the terms of the offer in any material respect may be operative as a counter-offer, but it is not an acceptance and constitutes no contract." *Steele v. Harrison,* 220 Kan. 422, 428, 552 P.2d 957 (1976). An ostensible acceptance which imposes a new or different term is not an unconditional acceptance, but it is a counteroffer. *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.,* 212 Kan. 730, 737, 512 P.2d 379 (1973).

At page 261 of Phifer's deposition, he recalls discussing on April 11, 1986, the three conditions of his resignation with the Board president, Ron Isham, and its attorney, Ward Loyd. He described the response of Mr. Isham in that conversation, as follows: "he said do you realize I can't guarantee those, but, he said, I don't see any reason why the Board wouldn't be sympathetic after your service to the Board. He said this seems like a fair request." (Phifer Depo. p. 261). Plaintiff's letter of resignation was prepared and delivered with copies to the Board president on the same day, April 11, 1986. The next significant communication concerning Phifer's resignation was the letter from the Board's attorney dated April 15, 1986, which stated that his resignation had been accepted by the Board upon his conditions but that his unearned salary and vacation leave would be escrowed pending satisfactory conclusion of the pending investigation. Defendant further testified that he never agreed to the new terms as they were different from those "promised" to him. (Phifer Depo. pp. 276–77). This last statement by the defendant regarding a promise is inconsistent with and contradicts his earlier statement regarding the tentative nature of the representations made to him by Board President Isham. In addition, the defendant has provided no factual basis for challenging the presumption that he understood the Board's vote would be controlling on this matter. After reviewing all of the evidence of record, the court believes the only conclusion a reasonable juror could reach is that the Board did not unconditionally accept the defendant's conditions to his resignation and, instead, made a counteroffer consisting of material changes to Phifer's terms. Defendant does not claim that he accepted the terms of the plaintiff's counteroffer and that the plaintiff subsequently breached that contract. For these reasons, the court grants summary judgment on count one of defendant's counterclaims.

## ORAL CONTRACT AND UNPAID REIMBURSEMENTS

In count two of his counterclaims, the defendant alleges the plaintiff orally agreed to pay defendant for work performed before the initial contract term began on July 1, 1984. Defendant seeks in count three to be reimbursed for expenditures that he incurred on behalf of the District. Plaintiff moves for summary judgment on both counts contending the defendant has not complied with the requirements of K.S.A. 12–105b (1982), which provides in relevant part:

(a) All claims against a municipality must be presented in writing with a full account of the items, and no claim shall be allowed except in accordance with the provisions of this section. A claim may be the usual statement of account of the vendor or party rendering a service or other written statement showing the required information.

(b) Claims for salaries or wages of officers or employees need not be signed by the officer or employee, if a payroll claim is certified to by the administrative head of a department or group of officers or employees or an authorized repre-

sentative that the salaries or wages stated therein were contracted or incurred for the municipality under authority of law, that the amounts claimed are correct, due and unpaid and that the amounts are due as salaries and wages for services performed by the person named.

Phifer first argues that this provision was waived in the letter from the District's counsel dated April 30, 1987, informing Phifer to present his claims in court. In that letter, Phifer was told of the Board's vote to terminate him without a hearing as the pending suit would be the proper forum to preserve his rights. This letter makes no direct or indirect reference to Phifer's counterclaims found in counts two or three. This waiver argument is without merit.

■ Phifer next argues that the District has not presented any record for this court to determine that no claim was filed. Nor has defendant offered any record to determine that a claim was filed. The requirements of 12–105b and its statutory predecessors have been consistently treated as conditions precedent for filing suit against a municipality. *Welch v. City of Kansas City*, 204 Kan. 765, 769–70, 465 P.2d 951 (1970); *Quigley v. General Motors Corp.*, 647 F.Supp. 656, 657 (D.Kan.1986). Defendant has not pleaded in compliance with Fed.R.Civ.P. 9(c), the performance of these conditions precedent.

■ Phifer also contends claims arising from contractual obligations are not covered by 12–105b. Before it was repealed and replaced by 12–105b, K.S.A. 12–105 provided: "No action shall be maintained by any person or corporation against any city on account of injury to person or property...." The Kansas courts read 12–105 literally and restricted its application to tort actions for injury to persons or property, and not contract actions. *Stauffer v. City of Topeka*, 200 Kan. 287, 289, 436 P.2d 980 (1968); *Murphy v. City of Topeka*, 6 Kan.App.2d 488, 492, 630 P.2d 186 (1981). "Prior to 1979, the Kansas Legislature had set up separate statutory sections governing tort claims and non-tort claims (including contractual claims)." *Quigley v. General Motors Corp.*, 647 F.Supp. at 658–

59. In contrast, 12–105b refers to all claims. Judge Saffels in *Quigley* noting that the language in 12–105b was more suited to contractual claims rather than tort claims excluded the latter from its coverage. 647 F.Supp. at 660–61. After the *Quigley* decision, the Kansas Legislature amended 12–105b(d) to address specifically claims under the Kansas Tort Claims Act. Besides the legislative history, the express wording of 12–105b reveals that it was intended to encompass all claims against a municipality, contractual in nature or not.

■ Finally, Phifer argues that if 12–105b requires notice before filing suit on a contractual claim, it denies him of his constitutional rights to due process and equal protection. The purpose of this provision is obviously to afford the public entity the opportunity to investigate the claim, to assess its liability, to attain settlement, and to avoid costly litigation. Therefore, the legislative classification of claims against public entities for special notice requirements serves a rational purpose. Since the requirements of 12–105b are conditions precedent to defendant's counterclaims two and three, and since their performance has not been pleaded or proven, the plaintiff's motion is granted.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment on defendant's counterclaims is granted.