**Edward W. ELAM, Plaintiff,**

v.

**Gary WILLIAMS, as Mayor of the City of Mulvane and as an individual, and City of Mulvane, Kansas, Defendants.**

**Michael C. BYERS, Plaintiff,**

v.

**Gary WILLIAMS, as Mayor of the City of Mulvane and as an individual, and City of Mulvane, Kansas, Defendants.**

**Nos. 88–1283–C, 88–1284–C.**

United States District Court,
D. Kansas.

Dec. 13, 1990.

---

Jack Focht, Focht, Hughey, Hund & Calvert, Wichita, Kan., for plaintiffs.

Brian C. Wright, Eldon Boisseau, Turner & Boisseau, Richard Sanborn, City Atty., Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

These cases were consolidated by agreed order on August 27, 1990. (Dk. 82). Before that order, separate motions for summary judgment and pretrial orders had been filed in each case. Because the claims, issues, and arguments are substantially similar in both cases, the court will decide the motions in a single order and will attempt to point out any necessary distinctions between the two cases.

In the spring of 1987, plaintiff, Edward W. Elam, was employed as the City Administrator for the City of Mulvane, and plaintiff, Michael C. Byers, was employed as the Director of Emergency Services for the City of Mulvane. Both claim their civil rights were violated by their terminations in 1987.

A motion for summary judgment is a threshold inquiry into the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

■ An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit under the controlling substantive law. 477 U.S. at 249, 106 S.Ct. at 2510–11. Factual inferences are drawn to favor the

existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476–77 (10th Cir.1990).

■ The movant's initial burden under Rule 56 of the Federal Rules of Civil Procedure is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 345 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon,* 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). Alternatively, it may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir. 1987).

■ The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party's evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon,* 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

■ Before briefly reciting the pertinent facts, this court will take up one procedural issue. On November 19, 1990, nearly three months late, the defendants filed their reply brief to the plaintiffs' responses. The minute order filed November 13, 1990, specifically limited the defendants to filing a brief on the legal issues raised by the death of defendant Williams. Apparently, the defendants saw this also as an opportunity to file a late reply brief without seeking leave

of the court. Such actions cannot be condoned. The court strikes that portion of defendants' pleading (Dk. 92) that purports to reply to the plaintiff's response. Therefore, the court will only consider the last page of the defendants' ten-page pleading captioned, "Defendants' Response to Plaintiffs' Reply to Joint Motion for Summary Judgment" (Dk. 92).

Defendant, Gary Williams, a member of the Mulvane City Council, was elected Mayor of the City of Mulvane and sworn into that office on April 20, 1987. On his first day as mayor, Williams suspended both plaintiffs with pay and communicated by letter the following reasons for their suspensions: (1) authorized the purchase of a typewriter at a cost exceeding $1,000 knowing the council had previously voted against this proposed purchase; (2) prepared separate purchase orders to hide the total cost of the typewriter purchase; (3) "failed to exercise fiscal responsibility;" (4) actively attempted to influence the outcome of recent elections in violation of the City's handbook; and (5) failed to manage your department and personnel in "a prudent and sound manner. . . ." Mayor Williams delivered the suspension letters to the plaintiffs at the council meeting on April 20th. At 11:30 p.m., after the council meeting, Mayor Williams asked plaintiff Elam to respond to the letter, but he declined as he wanted to speak to his attorney first. Plaintiff Byers does not recall being asked at that time to respond to the letter. Police officers then accompanied the plaintiffs to their offices while they obtained the items requested by the mayor in the letter and then they turned over their city keys to the police officers.

Copies of the suspension letters were also given to the council members attending the meeting. The letters were enclosed in an envelope marked "confidential." Members of the public present at the meeting observed the police officers escort the plaintiffs to their offices. Defendant Williams has admitted in his second amended answer that the charges in this suspension letter were made publicly.

On or about June 15, 1987, Mayor Williams suspended the plaintiffs for thirty days without pay and removed them from their respective positions with the City. The letter notifying the plaintiffs of this action accused them of "budget irresponsibility," "improperly becoming involved in the city election process," and "disclosing confidential city records." The letter to Byers included the additional accusations of "granting television interviews without approval" and "refusing to return city property." Defendant Williams has likewise admitted in his second amended answer that these charges were made publicly.

In a letter dated June 23, 1987, plaintiff Elam wrote Mayor Williams requesting a grievance hearing as set forth in the City's policy handbook. Elam explained that though he believed his position was not covered by the policies in the handbook, the Mayor's reliance on those policies as a basis for sanctioning him also must trigger the protection accorded therein. Elam then proceeded to answer Williams' charges. A meeting between Elam, Byers, Mayor Williams and Chief Tucker was held in which the plaintiffs were offered letters of reassignment to "Laborer II" with the City Street Department. Elam did not believe this meeting was an opportunity for enlarging upon what he had stated in his letter to Williams. Both plaintiffs did consider the assignment to be a constructive discharge.

On or about April 21, 1987, plaintiff Byers formally requested a grievance hearing. Another grievance hearing request was filed after the June 15th suspension without pay. The hearings were held on May 27, 1987; July 30, 1987; August 6, 1987; and August 16, 1987. The hearing officers sustained the suspensions of plaintiff Byers. Plaintiff Byers challenges the hearings as not meeting the requirements of due process in several respects. Some of the challenges are the consideration of evidence not presented at the hearing, the lack of specificity as to the reasons for suspension, biased factfinders, the treating of the city attorney's arguments as evidence, and the lack of evidence on the allegations. The transcripts of these hearings are attached to the defendants' joint motion for summary judgment. The City Council in June of 1987 approved Robert Welch as the Emergency Services Director on the suggestion and promotion of Mayor Williams.

This overview of the facts is sufficient to address most of the contentions advanced in the motions for summary judgment. When necessary, the court will refer to other relevant facts. The court intends to deviate from the order of issues addressed in the defendants' briefs so as to avoid duplicative rulings. Plaintiffs' claims under 42 U.S.C. § 1983 are denial of due process in their suspensions and removal from office, and constructive discharge.

## PROPERTY INTEREST

■ Procedural due process must accompany the deprivation of an established property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The range of protected interests is finite. *Id.* at 570, 92 S.Ct. at 2705. This court recently summarized the controlling law on the determination of a property interest:

> Though protected by it, property interests are not creations of the Constitution; they emerge from and their scope is defined "by existing rules or understandings that stem from an independent source such as state law...." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, (1985) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). A property interest is more than an "abstract need or desire" and also more than a "unilateral expectation." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. "The hallmark of property, ..., is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); see also *Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, 1395 (10th Cir.1988). "It is a purpose of the ancient institution of property to protect those claims upon which

people rely in their daily lives, reliance that must not be arbitrarily undermined." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

The determination of whether an employee has a property interest in his continued employment is made in accordance with state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Generally under Kansas case law, a public employee hired for a definite term has a property interest in continued employment, while an employee hired for a indefinite term is an "at-will employee" without a property interest. *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). *Unified School Dist. No. 457 v. Phifer*, 729 F.Supp. 1298, 1303 (D.Kan.1990). Property interests "arise from sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Dickeson v. Quarberg*, 844 F.2d 1435, 1437 (10th Cir.1988).

The plaintiffs claim they had an expectancy of continued employment in their positions with the City of Mulvane which amounts to a property interest. Plaintiffs testified their understanding was that they were appointed to their positions by the mayor and confirmed by the city council and that they would serve in their appointed positions until a successor was chosen and confirmed. The term of their appointments was one year. Elam was first appointed as City Administrator in 1980 and had been reappointed each year in May until 1987. Byers was appointed as the Emergency Services Director in 1985 and had been reappointed in May of 1986. Both plaintiffs also testified to their awareness of defendant Williams' campaign promise to replace them if he became mayor. They, however, discounted those promises on the personal belief that Williams would not and could not carry them out. These beliefs were based on Williams' past behavior, statements by other council members, and their conversations with Williams over their performance and possible replacements. In addition, Elam answered an interrogatory: "My conversations and course of dealing with the Mulvane City Council lead me to believe that my employment would only be terminated for cause."

■ The well-established law in Kansas on a public employee's property interest is that " 'the tenure of any office not provided for in the constitution may be declared by statute, and when not so declared such office shall be held at the pleasure of the appointing authority. Kansas law clearly establishes the incumbent to a public office enjoys no *property* or *vested interest* in public office.' " *Riddle v. City of Ottawa*, 12 Kan.App.2d 714, 717, 754 P.2d 465, *rev. denied*, 243 Kan. 780 (1988) (quoting *Stoldt v. City of Toronto*, 234 Kan. 957, 964, 678 P.2d 153 (1984)). The court in *Riddle* found that the plaintiff, the director of the Department of Public Safety for Ottawa, did not have a constitutionally protected property interest under Kansas statutes or the City's personnel regulations. *Id.* at 717–18, 754 P.2d 465. The statutes authorized the city manager to remove/suspend a city employee and did not limit that authority to certain circumstances, such as cause. *Id.* at 717, 754 P.2d 465. Therefore, in the absence of a state statute, city code or contract creating a definite term of employment, plaintiffs did not have a property interest in their positions with the City of Mulvane.

■ Plaintiffs first attempt to distinguish the *Stoldt* decision by suggesting that K.S.A. 15–204 was later amended in such a way as to create the expectation that they would serve in their positions until their successors were appointed. K.S.A. 15–204 provides in pertinent part:

The mayor, with the consent of the council, may appoint, at the first regular meeting of the governing body in May of each year, the following city officers: .... Such officers shall hold an initial term of office of not to exceed one year and until their successors have been appointed and qualified. Any officers who are reappointed shall hold their offices for a term of one year and until their successors are appointed and qualified.... Any officer may be removed by a majority vote of the total membership

elected or appointed to the council and may be suspended at any time by the mayor.

The plain reading of K.S.A. 15–204, however, does not support a specific duration of employment after the initial one-year term. Serving until a successor is politically appointed is not a term of specific duration. Nor does the statute suggest termination can only be for cause. Most importantly, this provision does not prevent a mayor from suspending without pay a city administrator and other officials until replacements are appointed and confirmed. This statute does not give rise to a property interest for either of the plaintiffs.

■ Plaintiffs primarily bank their property interest on an implied-in-fact employment contract theory. This theory has been seen as a retreat from the strict employment-at-will doctrine historically followed in Kansas. *Hullman v. Bd. of Tr. of Pratt Community College,* 725 F.Supp. 1536, 1548 (D.Kan.1989) (appeal pending). An implied contract may also be an exception to the general rule in Kansas that public employees have no property or vested interest in public office. See *Pilcher v. Board of Wyandotte County Comm'rs,* 14 Kan.App.2d 206, 209–10, 787 P.2d 1204, *rev. denied,* 246 Kan. No. 4, p. VII (1990).

In determining whether an implied contract exists, the following circumstances are relevant:

> Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Morriss v. Coleman Co.,* 241 Kan. 501, 513, 738 P.2d 841 (1987). An implied contract for a definite term or for continued employment absent good cause for termination will give rise to a property interest under Kansas law. See *Conaway v. Smith,* 853 F.2d 789, 793–94 (10th Cir. 1988).

■ Plaintiffs held appointive offices. Each year in May, their continued employment depended upon the current elected Mayor appointing them and the council confirming them. The fact that the plaintiffs had been reappointed on prior years does not establish a legitimate expectation in continued employment. See *Martin v. Unified School Dist. No. 434, Osage Cty.,* 728 F.2d 453, 455 (10th Cir.1984). Plaintiffs are unable to point to any statute, municipal code or handbook which says or could be inferred to say that a city official may be suspended or not appointed to another term by the Mayor only upon good cause. The understanding of prior mayors or council members on reappointments in the past is not significant in showing a mutual understanding between the plaintiffs and the current Mayor, defendant Williams, who had recently obtained the authority to suspend or appoint them. For that matter, it would not be reasonable for plaintiffs to rely on any assurances by other council members or prior mayors of continued employment. See *Polson v. Davis,* 635 F.Supp. 1130, 1141 (D.Kan.1986). Both plaintiffs must reasonably be expected to understand that their continued employment with the City of Mulvane depended in large part on the whim of who was elected mayor. The plaintiffs' testimony concerning conversations between them and Williams about their future employment is too vague, incomplete and indefinite as to treat it as evidence of the parties' mutual intent to contract rather than as evidence of only non-binding, general discussions of prospective actions. A unilateral expectation of continued employment does not constitute a property interest. Plaintiffs' evidence of an implied contract is simply insufficient for a reasonable factfinder to reach a verdict in their favor.

## LIBERTY INTEREST

■ In the absence of a property interest, procedural due process may still

require a hearing if a liberty interest is implicated. *Rich v. Secretary of the Army*, 735 F.2d 1220, 1226 (10th Cir.1984). Liberty encompasses two particular interests of a public employee: "1) the protection of his good name, reputation, honor, and integrity, and 2) his freedom to take advantage of other employment opportunities." *Conaway*, 853 F.2d at 794 (quoting *Miller v. City of Mission, Kan.*, 705 F.2d 368, 373 (10th Cir.1983)). The manner in which the employment is terminated may deprive the employee of a liberty interest. *Rich*, 735 F.2d at 1227. "When the termination is accompanied by public dissemination of the reasons for dismissal, and those reasons would stigmatize the employee's reputation or foreclose future employment opportunities, due process requires that the employee be provided a hearing at which he may test the validity of the proffered grounds for dismissal." *Miller v. City of Mission, Kansas*, 705 F.2d at 373 (citations omitted). A liberty interest is not impinged unless the false and stigmatizing information is made public by the government entity itself. *Derstein v. State of Kan.*, 915 F.2d 1410, 1414 (10th Cir.1990).

In defendants' opinion, it is uncontroverted that no member of the City of Mulvane government published the suspension or transfer letters regarding the plaintiffs. It is uncontroverted that defendant Williams wrote the letter and gave each attending council member a copy of it enclosed in an envelope marked "confidential." How the media obtained a copy of this letter which was later quoted on television and appeared in the newspaper remains a question of material fact. The submitted testimony on this point fails to show clearly that the letter was released by either someone not associated with city government or the plaintiffs themselves. Furthermore, defendant Williams' comments at the council meeting of June 27, 1987, were obviously published. Summary judgment is inappropriate on this issue.

■ Next, the defendants argue the plaintiffs were given a name-clearing hearing. The remedy required under the Due Process Clause of the Fourteenth Amendment when stigmatizing information is publicly disseminated in connection with the loss of employment is "an opportunity to refute the charge." *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." *Id.* The evidence of record is unclear on whether this opportunity for such a hearing was ever provided to plaintiff Elam. He requested grievance proceedings which were not afforded him. The fact he never requested a meeting with defendant Williams does not appear to defeat his liberty interest claim. See *Eames v. City of Logan, Utah*, 762 F.2d 83, 85–86 (10th Cir.1985). The other brief and informal encounters between Elam and Williams do not appear to have been opportunities for Elam to clear his name of the stigma caused by the allegedly false charges.

■ As to plaintiff Byers, grievance proceedings were conducted which possibly could constitute a name-clearing hearing. See *Johnson v. City of Wichita*, 687 F.Supp. 1501, 1510 (D.Kan.1988). However, Byers has raised a number of procedural inadequacies with those proceedings which have not been meaningfully addressed by the defendants in their motion. The transcripts from those hearings support a number of plaintiff's contentions including insufficient notice, lack of evidence, and biased factfinders. Material questions of fact preclude summary judgment.

■ Defendants next argue the alleged false statements were not stigmatizing since the plaintiffs were able to obtain comparable employment only several months after their termination. Both plaintiffs testified in their depositions that the publicized statements foreclosed some employment opportunities for them. The *Conaway* decision does not require any more proof at the summary judgment stage, and in the case at bar this seems particularly appropriate since the publicized statements essentially implicate the plaintiffs in criminal activities. Furthermore, charges of criminal activity can be stigmatizing also to

one's good name, reputation, honor, and integrity. The defendants are not entitled to summary judgment on the plaintiffs' liberty interest claim.

### LIABILITY OF THE CITY

The City believes it cannot be liable unless the plaintiffs show they were denied due process in their suspensions and terminations pursuant to a pattern or policy of the City instead of a single act of the mayor. This argument is short-sighted. The adverse employment actions taken by an individual exercising his final policymaking authority may subject the city to liability. See *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Municipal liability may also arise if the authorized policymaker ratifies the actions and the basis for them. See *Wulf v. City of Wichita*, 883 F.2d 842, 868 (10th Cir.1989). The defendants have not addressed either possibility in their motions, and plaintiffs point to several facts evidencing the applicability of either or both of them. Defendants have not sustained their burden on this argument.

### STATUTE OF LIMITATIONS

Defendants here advance a dated argument. They argue the plaintiffs' claims most closely resemble a libel or slander action and should be governed by the analogous Kansas one-year statute of limitations. In 1989, the Supreme Court held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). As the defendants are attempting to apply one of several statute of limitations governing personal injury actions in Kansas, this court must look to the residual two-year limitations period set forth in K.S.A. 60–513.

### GOOD FAITH IMMUNITY

Defendant Williams asserts good faith immunity as a defense to the suit against him in his individual capacity. Because of the above rulings, the court need only consider the Williams' immunity arguments concerning the liberty interest claims and the constitutional adequacy of the procedures afforded the plaintiffs.

In carrying out discretionary acts, government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 813, 102 S.Ct. 2727, 2735–36, 73 L.Ed.2d 396 (1982). The defense of qualified immunity requires the comparison of the objective legal reasonableness of the act with the clearly established law at the time of the act. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). This doctrine accommodates an official's exercise of discretion without the risk of civil liability so long as his actions could reasonably have been thought consistent with the rights allegedly violated. *Id.* at 638, 107 S.Ct. at 3038. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Qualified immunity is an issue of law, rather than fact. *Snell v. Tunnell*, 920 F.2d 673, 696–97 (10th Cir.1990). Once this defense is raised, the plaintiff must come forward with the facts and allegations which convince the court "that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). Unless the plaintiff proves both elements, the defendant will prevail. *Snell*, 920 F.2d at 696. Even if plaintiff carries his burden, the defendant may still prevail if he can show "extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard." *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738.

■ Plaintiff cannot overcome this defense simply by identifying a clearly established legal standard and alleging defendant's violation of it. Instead, he "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir.1990). The plaintiff's claimed right must be formulated and particularized such that it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Even though the unlawfulness of the act need not be the matter of a prior determination, the unlawfulness must be "apparent" under the law existing at that time. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. On the other hand, the inquiry into whether the right was clearly established cannot be structured so narrowly that the defense would only be inapplicable where there were no precedential case on all fours with the instant case. *Melton v. City of Oklahoma City,* 879 F.2d 706, 729 n. 36 (10th Cir.1989).

■ If the plaintiff preliminarily shows the defendant's violation of a clearly established right, the defendant then has the normal burden of summary judgment to demonstrate that no material issues of fact persist on whether his "actions were objectively reasonable in light of the law and the information he ... possessed at the time." *Coen v. Runner,* 854 F.2d 374, 377 (10th Cir.1988) (citation omitted). "A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity." *Id.* (citations omitted).

■ Even though a clearly established right has been violated, an official can assert he neither knew nor should have known of the legal standard under these extraordinary circumstances. *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39. The defendant has the burden of proving this rare exception. *V–1 Oil Co. v. State of Wyo., Dept. of Env. Quality,* 902 F.2d 1482, 1488 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). The circumstances must essentially prevent the defendant from knowing his actions violated a constitutional right. *Id.* The Tenth Circuit recently summarized the law regarding a commonly asserted circumstance, reliance upon the advice of counsel, and had this to say:

The circumstance most often considered for treatment as "extraordinary" is reliance upon the advice of counsel. (citation omitted). Of course, such reliance is not inherently extraordinary, for few things in government are more common than the receipt of legal advice. Still, "reliance on the advice of counsel in certain circumstances rises to the level of extraordinary circumstances." (citations omitted).

Whether reliance upon legal advice "bars our imputation to [the defendant] of constructive knowledge concerning the laws allegedly violated by this conduct," (citation omitted), depends upon the circumstance of each case. (citations omitted). Relevant factors include how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, (citations omitted), whether complete information had been provided to the advising attorney(s), (citations omitted), the prominence and competence of the attorney(s), (citations omitted), and how soon after the advice was received the disputed action was taken (citations omitted).

*V–1 Oil,* 902 F.2d at 1488–89 (footnote omitted). In *Melton v. City of Oklahoma City,* the Tenth Circuit refused to immunize public officials for their actions simply because they consulted counsel. 879 F.2d at 731.

Defendant Williams first contends that he delivered the suspension letters sealed in envelopes marked "confidential" in a good faith effort to maintain the privacy and confidentiality of those matters. As stated earlier in this order, the facts are controverted as to how the letters came into the hands of the media. The plaintiffs

deny they were responsible and, therefore, some official of the City, possibly Williams himself, was responsible. Furthermore, the manner in which the suspensions were handled, Williams' public comments at other council meetings, and the extensive nature of media coverage of this event precludes the court from ruling on this factually-oriented issue.

■■■■ Defendant Williams next argues the liberty interest implicated was ill-defined at the time. Plaintiffs have fully met their burden of showing their protectible liberty interest was clearly established law in 1987. See *Melton,* 879 F.2d at 731. Williams also argues he relied upon the advice of the city attorney in taking the challenged actions. The city attorney has averred that he advised Williams of the relevant law which in his opinion was unsettled in 1987. Such conclusory arguments and allegations fall short of proving an extraordinary circumstance. The evidence of record does not adequately address the relevant factors identified in *V–1 Oil.*

Finally, the defendant believes what procedures were necessary to constitute due process was an "uncertain question" in 1987. Defendant then states: "The terminated employee appears to be, in the case of a liberty interest claim, entitled to a post-termination 'name-clearing' hearing." (No. 88–1284, Dk. 86, p. 16). The Tenth Circuit has held that a name-clearing hearing after publication of the stigmatizing information may be constitutionally adequate. *Rankin v. Independent School Dist. No. I–3,* 876 F.2d 838, 842 (10th Cir. 1989) (citing *See, e.g., Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977); *Board of Regents v. Roth,* 408 U.S. 564, 573 & n. 12, 92 S.Ct. 2701, 2707 & n. 12, 33 L.Ed.2d 548 (1972); *Lentsch v. Marshall,* 741 F.2d 301, 303–04 (10th Cir.1984)). Even so, plaintiff Elam apparently was never granted such a hearing, and plaintiff Byers asserts the grievance procedures were constitutionally deficient on several grounds including insufficient notice and a biased factfinder. Neither side has adequately briefed what are the elements of a name-clearing hearing and whether those elements were met here. For this reason, the court will not take up that issue and will accept the plaintiffs' preliminary showing of defendant's violations of clearly established rights. Because defendant Williams has not carried his burden on these arguments, summary judgment is denied.

## PUNITIVE DAMAGES

In their most recent brief (Dk. 92), defendants ask for summary judgment on plaintiffs' punitive damage claims because defendant Williams has since died and the Eleventh Amendment bars punitive damages against the defendant City. Plaintiffs have not responded to this additional request for summary judgment. Since the case law in defendants' brief supports the propositions for which they were cited and plaintiffs do not counter with any arguments or authority, the court grants this motion as uncontested.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment in plaintiff Elam's case, No. 88–1283 (Dk. 59) and defendants' motion for summary judgment in plaintiff Byers' case, No. 88–1284 (Dk. 84) are granted as to plaintiffs' property interest and punitive damage claims and denied in all other respects.